Rel: August 23, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

_____

## CR-2022-1224

_____

## Labarron Miller

## v.

## State of Alabama

## Appeal from Mobile Circuit Court
## (CC-81-1570)

COLE, Judge.

In November 1980, when Labarron Miller was 17 years old, he broke into Geraldine Hayles's house and strangled her to death in front of her eight-year-old granddaughter. Miller was convicted of capital murder, and the Mobile Circuit Court sentenced him to life imprisonment

without the possibility of parole. This Court affirmed Miller's conviction and sentence on direct appeal. See Miller v. State, 440 So. 2d 1127 (Ala. Crim. App. 1983).

In 2016, Miller filed a Rule 32, Ala. R. Crim. P., petition for postconviction relief requesting that he be resentenced pursuant to Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and Montgomery v. Louisiana, 577 U.S. 190, 136 S. Ct. 718, 193 L. Ed 2d 599 (2016). (C. 92.) The circuit court granted his petition, vacated his sentence, and conducted a Miller resentencing hearing. After the hearing, the circuit court issued a 40-page sentencing order analyzing the 14 factors set out in Ex parte Henderson, 144 So. 3d 1262 (Ala. 2013). (C. 90-129.) "The Henderson factors have been described as mitigating circumstances" in the sentencing of a juvenile convicted of a capital offense. Jones v. State, 355 So. 3d 361, 388 (Ala. Crim. App. 2021). The circuit court sentenced Miller in open court, and in his written order, to life imprisonment without the possibility of parole. Miller appeals the circuit court's judgment.

On appeal, Miller argues that the circuit court erred when it sentenced him to life imprisonment without the possibility of parole

2

because, he says, it made "multiple errors in applying the facts of this case to the factors delineated in [Ex parte] Henderson[, 144 So. 3d 1262 (Ala. 2013)]." (Miller's brief, p. 13.) The State, on the other hand, argues that Miller's complaint about the circuit court's allegedly erroneous application of the Henderson factors in this case is not preserved for appellate review because Miller did not "file any post-resentencing motions or otherwise notify the trial court of its supposed abuse of discretion." (State's brief, p. 11.) We agree with the State.

It is well settled that

"'"[r]eview on appeal is restricted to questions and issues properly and timely raised at trial." Newsome v. State, 570 So. 2d 703, 717 (Ala. Crim. App. 1989). "An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented." Pate v. State, 601 So. 2d 210, 213 (Ala. Crim. App. 1992). "'[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.'" McKinney v. State, 654 So. 2d 95, 99 (Ala. Crim. App. 1995) (citation omitted). "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith, 526 So. 2d 880, 882 (Ala. 1987). "The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury." Ex parte Works, 640 So. 2d 1056, 1058 (Ala. 1994).'"

R.V.D. v. State, 268 So. 3d 96, 98-99 (Ala. Crim. App. 2018) (quoting Ex parte Coulliette, 857 So. 2d 793, 794-95 (Ala. 2003)). There are very few arguments that escape this rigid preservation-and-waiver rule; thus, there are very few arguments that can be raised for the first time in this Court on direct appeal. See, e.g., Hulsey v. State, 196 So. 3d 342, 352 (Ala. Crim. App. 2015) (holding that "issues with respect to the statute of limitations ... are matters not subject to the ordinary rules regarding preservation and waiver"), and Gavin v. State, 383 So. 3d 417, 419 (Ala. Crim. App. 2022) (recognizing the four exceptions to the preservation-and-waiver rule in a direct appeal from a probation revocation). One of the few recognized exceptions to the preservation-and-waiver rule is that, "when a sentence is clearly illegal or is clearly not authorized by statute, the defendant does not need to object at the trial level in order to preserve that issue for appellate review." Ex parte Brannon, 547 So. 2d 68, 68 (Ala. 1989) (citing Bartone v. United States, 375 U.S. 52, 84 S. Ct. 21, 11 L. Ed 2d 11 (1963)) (emphasis added).

Here, Miller's sentence of life imprisonment without the possibility of parole is clearly legal and clearly authorized by statute. See § 13A-5-43(e), Ala. Code 1975 ("If the defendant is found guilty of a capital offense

4

or offenses with which he or she is charged and the defendant establishes to the court by a preponderance of the evidence that he or she was under the age of 18 years at the time of the capital offense or offenses, the sentence shall be either life without the possibility of parole or, in the alternative, life, and the sentence shall be determined by the procedures set forth in the Alabama Rules of Criminal Procedure for judicially imposing sentences within the range set by statute without a jury, rather than as provided in Sections 13A-5-45 to 13A-5-53, inclusive. The judge shall consider all relevant mitigating circumstances.").  What is more, Miller's argument on appeal does not challenge the legality of his sentence of life imprisonment without the possibility of parole.  Rather, Miller argues that the circuit court made "multiple errors in applying the facts of this case to the factors delineated in [Ex parte] Henderson[, 144 So. 3d 1262 (Ala. 2013)]." (Miller's brief, p. 13.)  That argument, however, is not one of the recognized exceptions to the preservation-and-waiver rule, and this Court will not expand the preservation-and-waiver rule to make an exception for Miller's argument.  Thus, to present his argument to this Court, Miller had to first present that argument to the circuit court.  He did not.

Here, the circuit court held Miller's resentencing hearing on December 13, 2021. At the hearing, Miller called several witnesses, including Breeshun Juzang Callier, Mary Simmons, and Judith Miller Williams. Miller also testified on his own behalf. At the close of the evidence, the circuit court addressed the parties as follows:

> "So the hearing will be, shortly, concluded. I'm gonna tell the parties what I plan to do. I understand that the parties have already addressed the <u>Henderson</u> factors. I know that. But what I'm going to do is ask the parties to consolidate -- You've previously addressed it. There's been some more information come out today that we didn't previously -- at least, I wasn't previously aware of.
>
> "I'm gonna ask each party to file a post-hearing brief addressing each one of the 14 <u>Henderson</u> factors. You may be repeating things that you've already done. You may both do -- I want it -- I want it in post-hearing form and I want you to cite the record.
>
> "So I'm going -- I'm going to need to get a transcript from the court reporter before you can cite the record…
>
> "(Off the record briefly.)
>
> "Back on the record.
>
> "I'm going to ask you each to give me a post-hearing brief addressing each of the <u>Henderson</u> factors with citations to the record, the transcript of this hearing, as well as the exhibits.
>
> "….

"Now, one thing I'm interested in is -- and I -- I spent the weekend trying to locate a lot of information. I was try -- I've been trying to get the original appellate opinion affirming this conviction in 1982. And I've got the --

"....

"If either of you can get your hands on that, I would like to see the Court of Criminal Appeals' opinion.

"Third, there's some law out there -- a very recent case, Wynn, and I've got the Westlaw cite, I'll give this to both sides: 20 -- 2177656, 2177656. It's a May '21 opinion. And in this case, the -- it was a review of the Judge's sentencing order. He went through an evaluation of the 14 Henderson factors. And there was a discussion about the fact that the defendant must be sentenced under the law in effect at the time of the commission of the offense.

"But the Wynn case confirmed what we all already know, which is that the legislature, however, kind of addressed that issue when it made life or life without parole option for juvenile defendants retroactive. Okay. I know that. But I still would like to get my hands on -- and I haven't been able to get my hands on it yet -- the capital murder statute and the sentencing statute that were in effect at the time the act was committed here, so some help from either of you on that."

(R. 343-47.) The parties agreed that they could file their post-hearing briefs within a timeframe suggested by the circuit court.

On June 8, 2022, Miller filed a post-hearing brief, in which Miller set out the 14 Henderson factors and explained how he had established those factors at the resentencing hearing. (Supp. C. 1527-65.) On June

7

9, 2022, the State filed its post-hearing brief arguing that the circuit court should sentence Miller to life imprisonment without the possibility of parole. (Supp. C. 1569-78.)

On October 26, 2022, the circuit court sentenced Miller in open court. Before doing so, the circuit court gave the parties an opportunity to correct any errors to the presentence investigation report, allowed Miller to present a statement from Mary Simmons, and allowed Miller to allocute. The circuit court then read from portions of its written sentencing order, explaining its findings as to the 14 Henderson factors. (R. 12-45.) Miller raised no objections to the circuit court's findings. On the same day it pronounced Miller's sentence, the circuit court issued its 40-page written order. (C. 90-129.) Miller filed no postjudgment motions challenging the circuit court's judgment or its application of the Henderson factors.

Because Miller raised no arguments in the circuit court concerning the way it had applied the Henderson factors to his case, Miller's argument on appeal that the circuit court erred in its application of the Henderson factors is not preserved for appellate review and, thus, it is not properly before this Court.

In his reply brief, Miller says that his argument is preserved for appellate review because the circuit court "was apprised of [his] position that, based on the evidence presented at the Resentencing Hearing, analyzed by the parties under [Henderson] in the post-hearing briefs, he should be sentenced [to] life imprisonment, with the possibility of parole" and the circuit court rejected his position. (Miller's reply brief, pp. 1-2.) But Miller's position in his post-hearing brief as to how he viewed the evidence presented at his resentencing hearing and why he believed it warranted a sentence of life imprisonment is not equivalent to his argument on appeal that the circuit court erred in its application of the Henderson factors to his case.

For example, throughout his brief on appeal, Miller argues that the circuit court "erred in failing to consider" the Henderson factors "as mitigating in favor of a sentence of life imprisonment." (Miller's brief, pp. 27, 35, 37, 39, 40, 41, 42, 45, and 48.) Miller never raised an argument in the circuit court that the circuit court had "failed to consider" a particular Henderson factor as mitigating when it should have. Although Miller's post-hearing brief provided the circuit court with Miller's view as to how he would weigh the evidence presented at his resentencing

9

hearing, Miller never argued, either at the sentencing hearing or in a post-judgment motion, that the circuit court erred in the way it weighed the evidence in reaching its judgment.

In short, if Miller believed that the circuit court erred when it applied the <u>Henderson</u> factors to his case (either because it had failed to consider a particular factor as mitigating when it should have or that it had improperly weighed the <u>Henderson</u> factors), Miller had to first present his argument to the circuit court. Because Miller did not do so, his argument on appeal is not properly before this Court for appellate review.

But even if it had been preserved, Miller's argument on appeal is without merit.

On appeal, Miller argues that the circuit court's application of the <u>Henderson</u> factors to his case was erroneous. Throughout his brief on appeal, Miller points to two reasons to reverse the circuit court's judgment. First, Miller argues that the circuit court "erred in failing to consider" the <u>Henderson</u> factors "as mitigating in favor of a sentence of life imprisonment." (Miller's brief, pp. 27, 35, 37, 39, 40, 41, 42, 45, and 48.) Second, Miller argues that the circuit court erred in its weighing of

the evidence when it sentenced him to life imprisonment without the possibility of parole.

As to his first argument,

"'This Court has previously recognized:

"'"'The United States Supreme Court's decision in <u>Lockett v. Ohio</u>, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978), requires that a circuit court consider all evidence offered in mitigation when determining a capital defendant's sentence. However,

"'"'"'[m]erely because an accused proffers evidence of a mitigating circumstance <u>does not require the judge or the jury to find the existence of that fact</u>. <u>Mikenas [v. State</u>, 407 So. 2d 892, 893 (Fla. 1981)]; <u>Smith [v. State</u>, 407 So. 2d 894 (Fla. 1981)].' <u>Harrell v. State</u>, 470 So. 2d 1303, 1308 (Ala. Cr. App. 1984), aff'd, 470 So. 2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S. Ct. 269, 88 L. Ed. 2d 276 (1985)."

"'"'<u>Perkins v. State</u>, 808 So. 2d 1041[, 1137] (Ala. Crim. App. 1999). "'<u>Although the trial court must consider all mitigating circumstances, it has discretion in determining</u>

11

whether a particular mitigating circumstance is proven and the weight it will give that circumstance.'" Simmons v. State, 797 So. 2d 1134, 1182 (Ala. Crim. App. 1999), quoting Wilson v. State, 777 So. 2d 856, 893 (Ala. Crim. App. 1999). "'While Lockett [v. Ohio, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978),] and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority.'" Ex parte Slaton, 680 So. 2d 909, 924 (Ala. 1996), quoting Bankhead v. State, 585 So. 2d 97, 108 (Ala. Crim. App. 1989).'"

"'White v. State, 179 So. 3d 170, 236 (Ala. Crim. App. 2013) (quoting Albarran v. State, 96 So. 3d 131, 212-13 (Ala. Crim. App. 2011)).'

"Wilkerson, 284 So. 3d [937, 959 (Ala. Crim. App. 2018)] (emphasis added)."

Thrasher v. State, 295 So. 3d 118, 130 (Ala. Crim. App. 2019).

Here, Miller does not argue that the circuit court failed to consider any of the 14 Henderson factors; rather, Miller argues that the circuit court erred because it "failed to consider" those factors "as mitigating in favor of life imprisonment." Miller's argument conflates the circuit court's duty to consider the 14 Henderson factors with its discretionary function of finding those factors as having been established by the

12

evidence and what mitigating weight it should assign to any established factor. Although the circuit court must consider the <u>Henderson</u> factors presented to it, there is no requirement that the court find that the factor exists or that it assign any particular mitigating weight to that factor. Because, here, the circuit court clearly considered all the <u>Henderson</u> factors when it sentenced Miller to life imprisonment without the possibility of parole, Miller's "failed-to-consider" argument is without merit.

Additionally, Miller's argument concerning how the circuit court applied the <u>Henderson</u> factors to the evidence presented at his resentencing hearing is without merit. Indeed, Miller's argument is nothing more than his disagreeing with the circuit court's weighing of the evidence presented at his resentencing hearing and his disagreeing with the circuit court's finding that its weighing of that evidence warrants a sentence of life imprisonment without the possibility of parole. The law is clear that a

> "'"mere disagreement with the circuit court's weighing of the evidence does not entitle [a defendant] to relief."' <u>Wynn v. State</u>, 354 So. 3d 1007, 1030 (Ala. Crim. App. 2021) (quoting <u>Boyd v. State</u>, 306 So. 3d 907, 919 (Ala. Crim. App. 2019)).

> "'It is well settled that,

"'"'[w]here a trial judge imposes a sentence within the statutory range, this Court will not disturb that sentence on appeal absent a showing of an abuse of the trial judge's discretion.' Alderman v. State, 615 So. 2d 640, 649 (Ala. Crim. App. 1992). 'The exception to this general rule is that "the appellate courts may review a sentence, which, although within the prescribed limitations, is so disproportionate to the offense charged that it constitutes a violation of a defendant's Eighth Amendment rights."' Brown [v. State, 611 So. 2d 1194,] 1197, n. 6 [(Ala. Crim. App. 1992)], quoting Ex parte Maddox, 502 So. 2d 786, 789 (Ala. 1986)."

"'Adams v. State, 815 So. 2d 583, 585 (Ala. Crim. App. 2001). Because life imprisonment without the possibility of parole remains a sentencing option for juvenile offenders, even in light of the Supreme Court's decisions in Miller and Montgomery, the standard of review to be applied is an abuse-of-discretion standard. In the present case, ... we see no reason to create or apply a more stringent standard for reviewing a sentencing court's ultimate determination following a hearing conducted pursuant to Miller and Montgomery. Cf. [People v.] Skinner, 502 Mich. [89] at 137, 917 N.W.2d [292] at 317 [(2018)] ("Miller's and Montgomery's emphasis on the rarity of juveniles deserving of life-without-parole sentences does not counsel against applying an abuse-of-discretion standard. The trial court remains in the best position to determine whether each particular

14

defendant is deserving of life without parole. All crimes have a maximum possible penalty, and when trial judges have discretion to impose a sentence, the imposition of the maximum possible penalty for any crime is presumably 'uncommon' or 'rare.' Yet this Court has never imposed a heightened standard of appellate review, and it should not do so in this instance.").'

"Wilkerson v. State, 284 So. 3d 937, 956 (Ala. Crim. App. 2018)."

Jones v. State, 355 So. 3d 361, 387 (Ala. Crim. App. 2021).

Here, Miller's sentence is within the range of punishment set out for juvenile capital offenders and, based on the evidence presented at his Miller resentencing hearing, the circuit court's weighing of that evidence, and the circuit court's consideration of the Henderson factors, we cannot conclude that the circuit court abused its discretion when it sentenced Miller to life imprisonment without the possibility of parole.

As explained above, the circuit court considered all the Henderson factors when it sentenced Miller to life imprisonment without the possibility of parole, and it weighed the evidence presented at the Miller resentencing hearing in light of those factors. Although Miller argues that the evidence he presented supports a sentence of life imprisonment, Miller's "disagreement with the circuit court's weighing of the evidence

15

does not entitle [him] to relief." <u>Boyd v. State</u>, 306 So. 3d 907, 919 (Ala. Crim. App. 2019).

<u>Conclusion</u>

Because Miller's argument on appeal is not preserved for appellate review, and, even if it had been preserved, is without merit, we affirm the circuit court's judgment sentencing Miller to life imprisonment without the possibility of parole.

AFFIRMED.

Windom, P.J., and Kellum, McCool, and Minor, JJ., concur.